# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD C. HELLER, JOHN R. FLINN, ) <br> MATTHEW W. LINDSEY, OTTO G. ) <br> BARTON, II, and CHRIS WILLIAM ) <br> BENDER, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JERRY C. FULARE a/k/a JEROME ) <br> FULARE, individually, and in his official ) <br> capacity of Logan Township Supervisor, ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. 3:2004-265 <br><br><br> JUDGE GIBSON |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on the Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (Document No. 44). Only Count I of the Plaintiff's Second Amended Complaint remains outstanding following this Court's Memorandum Opinion and Order of September 25, 2006 (Document No. 33) and this count is the subject of the present motion. For the reasons stated herein the Defendant's Motion will be granted.

## JURISDICTION

This matter comes before the Court on the Plaintiffs' final remaining claim prosecuted pursuant to 42 U.S.C. § 1983: employment discrimination through retaliation in violation of the Plaintiffs' exercise of their First Amendment right to freedom of speech. The Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND/STATEMENTS OF UNDISPUTED MATERIAL FACT

In accordance with Local Rule 56.1, after a review of the proposed statements of undisputed facts submitted by the parties, the following narrative sets forth the undisputed material facts as admitted by the parties or as established in the record from the Court's review of the parties' submissions. Although the Plaintiffs presented a "COUNTERSTATEMENT OF FACTS" within their Brief in Opposition (Document No. 50), such facts will not considered by the Court here and are in fact hereby stricken from the record for the Plaintiffs' failure to comply with Local Rule 56.1 (C)in that they did not present a responsive concise statement of proposed material facts set forth in "separately numbered paragraphs" in a "separately filed concise statement".[1] Therefore, for purposes of the Defendant's Motion, the following are the concise statements of undisputed material facts within the record[2] before the Court:

> Plaintiffs filed a Complaint against Defendant Fulare [hereinafter "Fulare"], on October 27, 2004. The Complaint raised five (5) Counts and included allegations of violations of the Pennsylvania Whistleblower Law and Plaintiffs' First Amendment Rights and Fourth Amendment Substantive Due Process Rights pursuant to 42 U.S.C. § 1983. Defendant's Motion to Dismiss was granted in part and denied in part on March 30, 2005. Plaintiff filed an Amended Complaint on April 19, 2005, again alleging five

---

[1] Presumably, the Plaintiffs' failure to comply with this procedure was the reason for the Defendant's failure to respond to the deficient filing. While such a failure to respond to such a deficient filing may be excused under the present circumstances, a failure to respond to a properly presented responsive concise statement will result in an admission to all of the material facts set forth in the responsive concise statement. *See* L.R. 56.1(E).

[2] The following facts are quoted from the submissions of the parties made pursuant to Local Rule of Court 56.1. Therefore, with the exception of some deletions or insertions marked with brackets or elipses, these matters are quoted directly and are indented within the following several pages to indicate as such.

2

(5) causes of action: Count[s] I and II First Amendment Claims; Count III Claim for Defamation and Counts IV and V Substantive Due Process Claims. [Fulare] filed a Motion to Dismiss the original Complaint and Amended Complaint. The Court granted the Motion in part and denied it in part. This Honorable Court held that Plaintiffs' First Amendment Claims could go forward to the extent that they were based upon a claim that [Fulare] initiated an investigation. The Court held that the claimed injury to reputation did not establish a substantive due process violation. Plaintiffs filed a Second Amended Complaint once again in an attempt to assert a substantive due process claim and also a state law tort claim for defamation. Thereafter, the [Fulare] filed an interlocutory appeal from the denial of [Fulare's] entitlement to immunity on the defamation claim. The [Court of Appeals for the] Third Circuit granted [Fulare's] appeal and concluded that Defendant "supervisor is entitled to absolute immunity granted to high public officials by Pennsylvania law." *Heller v. Fulare*, 454 F.3d 174 (3d Cir. 2006). Accordingly, the Honorable Judge Gibson dismissed Plaintiff's defamation claims. This Court recently granted [Fulare's] Partial Motion for Dismissal of Plaintiffs' Amended Substantive Due Process Claims. This Court also dismissed Plaintiff Bender from this case. Plaintiffs' only remaining claim is that [Fulare] allegedly violated Plaintiffs' First Amendment rights.

Plaintiffs are police officers for Logan Township [Blair County, Pennsylvania]. Plaintiff Heller [hereinafter "Heller"] is the current Chief of Police of Logan Township. Heller was appointed to interim Chief of Police by the Logan Township Board of

3

Supervisors on March 13, 2003. On July 10, 2003, Heller was appointed as Chief of Police for Logan Township with a one year probationary period. Thereafter, Heller completed his probationary period and continues to serve as Police Chief. Prior to [Heller] becoming the Chief of Police, the Board voted to hire Rabun G. Moss [hereinafter "Moss"] as Chief of Police on September 12, 2002. [Moss] was required to undergo certain training and testing to become certified as a Pennsylvania police officer. [Fulare] is an elected supervisor of Logan Township. He served in this capacity since he took office in January of 2004. Nine months before Fulare took office, [Moss] resigned in March, 2003.

On January 7, 2003, Plaintiffs Lindsay and Barton reported alleged failures and wrongdoings by then [Moss] in his requirements for education, training and certification as a Pennsylvania police officer under Pennsylvania law. Plaintiffs Lindsay and Barton reported these failures to Logan Township Solicitor, Lawrence Clapper and Logan Township Manager, Bonnie Lewis...at the direction of then Lieutenant Heller. The alleged failures and wrongdoing of [Moss] "Constituted a violation of the laws and regulations that protect Logan Township." All of the Plaintiffs swore an oath to support and defend the United States Constitution and the Commonwealth of Pennsylvania Constitution. Plaintiffs allege that [Moss] resigned because of an investigation conducted by the Municipal Officer Education and Training Commission (hereinafter "MPOETC") into Moss' police certification. MPOETC investigated information it received from Plaintiffs.

4

Plaintiffs allege that [Fulare] had them "investigated" because of their participation in the MPOETC proceedings, in violation of their First Amendment rights. Logan Township Police Officers are required to "cooperate with all agencies engaged in the administration of justice as well as with all local, state, and federal public agencies and departments and shall provide all the aid and information to which such agencies and departments are entitled...in accordance with existing laws and regulations." Logan Township Police Department's policy states that police officers shall obey the statutes and law of the Commonwealth of Pennsylvania and United States. Logan Township police officers are required to give an oath stating "I will be exemplary in obeying the laws of the land and the regulations of my department...I will enforce the law courteously and appropriately..." Plaintiff Lindsay was instructed by the Township Manager, Bonnie Lewis, to give statements to MPOETC regarding the alleged failures.

On June 26, 2003, Heller approved the successful completion of [Plaintiff] Lindsay's probationary period. On July 22, 2004, the Board of Supervisors unanimously voted to appoint Plaintiff Flinn, amongst other individuals to the rank of Sergeant. On August 28, 2003, the Board unanimously approved permission of Plaintiff Barton to pursue additional outside employment, which is required by department policy. In January of 2004, [Fulare] received information from other nonparty Logan Township police officers that Plaintiffs, other police officers and other individuals associated with the Township who are not police officers, engaged in various activities

that [Fulare] believed were potentially criminal in nature. [Fulare] continued to receive information concerning alleged criminal activities. Acting upon this information, on May 6, 2004, a computer was removed from the Township's Police Department at the direction of [Fulare], who had received information it had pornographic material on it. The computer was taken to the Pennsylvania State Police. The Board of Supervisors discussed receipt of this information in an executive session. Thereafter, the Board of Supervisors authorized an investigation into these issues by the state police. Furthermore, [Fulare] contacted the local District Attorney to look into other police matters. These matters included not only the alleged pornographic information on the computer, but also a pattern of harrassment towards [Moss] that involved one or more Logan township police officers stealing [Moss'] license plate from his personal vehicle.

[Fulare] authored a July 14, 2004 letter to the District Attorney that identified all of the information he had received from non-party police officers concerning potential police misconduct within the Logan Township Police Department. This July 14, 2004 letter identified potential misconduct of other nonparty police officers in addition to the Plaintiff police officers, as well as other individuals associated with Logan Township. Fulare met with the District Attorney on one occasion. The District Attorney's office determined that it was appropriate to ask the Pennsylvania Attorney General's Office [hereinafter "AG"] to handle Defendant Fulare's letter. No investigation was conducted by the District Attorney's office into Fulare's allegations contained within his July 14, 2004 letter. Subsequently, a September 4, 2004 article in

the Altoona Mirror announced that the [AG] was investigating the conduct of the Logan Township police officers. [Fulare] did not participate in any way in publication of the September 4, 2004 article. Furthermore, he did not have any information about its publication prior to the time it appeared. The [AG] conducted a preliminary inquiry into the information and accusations received by [Fulare] from other Logan Township police officers. The [AG's] "investigation" consisted solely of meeting with Fulare on one occasion, and thereafter deciding to make inquiry into [an] alleged illegal vehicle search, the allegation of nude photographs downloaded onto the Amber Alert Computer, and the allegation concerning alleged domestic abuse possibly not investigated by Heller. The [AG] quickly determined that [Fulare's] allegations did not call for criminal prosecution.

In determining that the information received by [Fulare] did not justify investigation, the [AG] took the following actions:

a) It contacted the Pennsylvania State Police regarding the alleged pornographic materials on the computer and learned that it had the computer in question and there was no evidence of these photographs on the hard drive.

b) The [AG] contacted a state trooper who was alleged to know about the domestic violence by a Logan [Township] police officer and learned that the trooper had intervened, that there was no altercation, and that the state trooper had followed up the matter with [Heller].

c) The [AG] obtained the police report regarding the crash of an AG vehicle by

a Logan [Township] police officer and learned that there was no evidence that drugs or alcohol was involved.

d) The [AG] contacted the nonparty Logan [Township] police officer that reported a stolen license plate to [Fulare] and was told that the stolen license plate was a rumor. It then decided that matter would not be pursued.

e) The [AG] contacted a nonparty Logan [Township] Police Officer, Sergeant Patterson for information regarding an alleged illegal background check, but did nothing further on the allegation because Sergeant Patterson was reluctant to cooperate.

Officers Walter, Benzel, Bender, and Kudlawiec are not Plaintiffs to this action. They did not participate in the MPOETC matter concerning former [Moss.] There are many other individuals identified in [Fulare's] July 14, 2004 letter that were referred to the [AG] and whose conduct called into question, some of whom are not even Logan Township police officers. The [AG] conducted no investigation of an alleged "setup of the test for the prior Chief." Counsel for the [AG] who was in charge of making the inquiries about [Fulare's] allegations was not even aware of what those allegations were about. She never discussed it with the AG agent assigned to the matter. On November 9, 2004 the [AG] informed the District Attorney's Office that there was insufficient evidence to support any criminal activity of the [Logan Township] Police Department. Furthermore, there was no active extensive investigation involving surveillance, photography or interviews by the [AG]. [Heller] admitted that he was not interviewed

by the AG's office. Further, he had never heard of anyone else being interviewed by the [AG]. Plaintiffs Barton, Lindsay and Flinn were not interviewed or attempted to be interviewed as part of an alleged investigation of the [AG]. Plaintiff Flinn admitted that he did not believe there was ever any type of investigation by any type of investigator into Plaintiffs' activities. It quickly became apparent to the [AG] that the allegations did not call for criminal prosecution. [Heller] testified that [Fulare's] public statements at the Board of Supervisors' meeting started his contemplation of suing. Furthermore, [Heller] testified repeatedly that the reason for suing [Fulare] is because of the things being stated about the Plaintiffs. Officer Barton testified that he did not contemplate suing the [Fulare] until after the September 4, 2004, Altoona Mirror Newspaper article titled "*Logan Police Probed*," which cannot be attributed to [Fulare]. Specifically, [Plaintiff] Barton stated that he did not contemplate suing before because nothing had damaged his reputation. [Plaintiff] Lindsay testified that he chose to sue because of the September 4, 2004 Altoona Mirror article titled "*Logan Police Probed*". [Heller] testified that the only reasons for filing the lawsuit was the public statements made by [Fulare] at the board meetings and the allegations about conspiracy by the Plaintiffs.

## ANALYSIS

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). It is the duty of the movant to establish that the record demonstrates an "absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986).

"The substantive law [identifies] which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202, 211 (1986). As to the genuineness of an issue of material fact, an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202, 212.

The non-movant can defeat a motion for summary judgment provided that he produces "affirmative evidence" beyond the content of his pleadings that demonstrates the existence of a genuine issue of material fact that remains for trial. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). "Such affirmative evidence-regardless of whether it is direct or circumstantial-must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 4601-461 (3d Cir. 1989)).

In reviewing a motion for summary judgment, the Court is obligated to "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Andreoli v.*

*Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Fulare presents four arguments in favor of summary judgment with regard to the last remaining count, Count I: lack of standing of the Plaintiffs, application of qualified immunity for Fulare, Fulare's lack of retaliation through initiation of investigation, and lack of any adverse employment consequences to the Plaintiffs. The Court need only review the "standing" and qualified immunity issues, and reserves analysis of the lack of retaliation or lack of causation with respect to retaliatory actions.

### A. Standing

Although Fulare couches his first argument in terms of the Plaintiffs' lack of standing, the controlling precedent cited by Fulare never refers to the issue of standing. Fulare's Brief (Document No. 45), pp. 13-14 cites *Garcetti v. Ceballos*, ___ U.S. ___, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) for the principle that public employees lack the protections of the First Amendment right to free speech when they speak pursuant to their public duties.

*Ceballos* does indeed stand for the proposition cited by Fulare and the Supreme Court recognized such when it reviewed the precedents regarding First Amendment speech of public employees. The Court in *Ceballos* stated:

> *Pickering* [*v. Board of Ed. Of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)] and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. See *id.*, at 568, 88 S.Ct. 1731. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. See *Connick*, *supra*, at 147, 103 S.Ct. 1684. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. See *Pickering*, 391 U.S., at 568, 88 S.Ct. 1731. This consideration reflects the importance

11

> of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.

*Ceballos* at ___ U.S. ___, 126 S.Ct. 1951, 1958, 164 L.Ed.2d at 698-699. In *Ceballos*, Ceballos was a calendar deputy district attorney, in Los Angeles County, California and he disagreed with the contents of an affidavit sworn in support of a search warrant. *Ceballos*, at ___, 126 S.Ct. at 1955-1956, 164 L.Ed.2d at 696. In light of "perceived inaccuracies" in the affidavit supporting the search warrant, Ceballos, through the means of a written memo, suggested to his superiors the dismissal of the criminal prosecution that resulted from the search. *Id.* Ceballos's superiors disagreed, proceeded with the prosecution and Ceballos allegedly, based upon his claims, faced retaliation through reassignment of position, " transfer to another courthouse, and denial of a promotion." *Ceballos*, at ___, 126 S.Ct. at 1956, 164 L.Ed.2d at 697. In the *Ceballos* matter, the parties agreed that Ceballos spoke out regarding the affidavit "pursuant to his duties as a calendar deputy." *Ceballos*, at ___, 126 S.Ct. at 1959-1960, 164 L.Ed.2d at 701. The Supreme Court concluded that under such circumstances, there was no restriction of Ceballos' personal liberty: "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Id.* at ___, 126 S.Ct. At 1960, 164 L.Ed.2d at 701.

After the decision in *Ceballos*, the Court of Appeals for the Third Circuit deconstructed the Supreme Court's First Amendment retaliation claim analysis as follows:

> A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the

12

> government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made. *Garcetti v. Ceballos,* --- U.S. ----, ----, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689, ---- (2006). A public employee does not speak "as a citizen" when he makes a statement "pursuant to [his] official duties." *Id.* at 1960. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (quoting *Connick v. Myers,* 461 U.S. 138, 147-148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

*Hill v. Borough of Kutztown,* 455 F.3d 225, 241 -242 (3d Cir. 2006). In *Hill,*[3] the Third Circuit, concluded that Hill, a former borough manager, had in fact reported his own complaints as well as complaints of other borough employees regarding the actions of the borough mayor to the borough council as a task pursuant to his position as borough manager, not as an individual who was being harassed by the mayor's actions. *Hill* at 242. The Third Circuit concluded the nature of such reporting was not "as a citizen." *Id.*

From these recent precedents, the Court can only conclude that what Fulare refers to as standing, is in fact one element of an individual's First Amendment right to freedom of speech when that person is employed by a public entity.

Addressing the facts specific to Count I of the Complaint, Fulare attempts to demonstrate that the Plaintiffs proceeded to report the misconduct of Chief Valle[4] and Moss to the MPOETC pursuant

---

[3]*Hill* concerned a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6).

[4]Although not referred to in the statements of undisputed material facts, Chief Valle was the individual employed at the Johnstown Career and Technical Institute as a police academy instructor who was found to have provided testing materials to Moss for the purpose of Moss using such materials to study for an MPOETC certification exam. Plaintiffs' Brief in Opposition (Document No. 50), Exhibit B. Chief Valle was found not to have violated MPOETC's "cheating policy" but did have his MPOETC instructor certification revoked for conduct which reflected unfavorably upon a certified school or the Commission, specifically his "lack of integrity and/or incompetence." *Id.*, pp. 15-16.

13

to their duties as police officers. Fulare does this through offering that any Logan Township police officer, such as the individual Plaintiffs, swore an oath to support the federal and state constitutions, that they must obey all laws, and that their cooperation with other agencies "engaged in the administration of justice" is required. Moreover, it is an undisputed fact that Heller directed Lindsay and Barton to report former Chief Moss' actions to the Logan Township solicitor and the township manager. Later the township manager directed Plaintiff Lindsay to speak to the MPOETC regarding Moss' actions. Although proposed to the Court as an undisputed fact by Fulare, it is clear that the Plaintiffs never *alleged* that they revealed information pursuant to a duty imposed by their employment as Logan Township police officers. *See* Second Amended Complaint (Document No. 22), ¶ 19.

Applying the undisputed facts to the police manual for Logan Township, (Fulare's Appendix, (Document No. 47), Exhibit "P"), it is apparent where the line of personal exercise of rights ends and the actions of the Plaintiffs in furtherance of their duties as police officers begins. The police manual for Logan Township Police Officers requires the cooperation of the Plaintiffs as members of the police department "with all agencies engaged in the administration of justice as well as with all local, state, and federal public agencies and departments, and shall provide all the aid and information to which such agencies and departments are entitled to in accordance with existing laws and regulations." Furthermore, another requirement set forth in section twenty-five of the police manual states: "All members of the Department shall promptly obey any lawful order from any member of the Board of Supervisors, any superior officer or the Township Manager."[5] Plaintiffs Lindsay and Barton took

---

[5]This section of the police manual was not offered by the parties as a proposed undisputed material fact, but it was included in the copy of the police manual submitted to the Court and is of record in this case. Being of record in this matter, the Court may rely on the police manual in this summary judgment analysis as it is properly before the Court. *Lockhart v.*

14

direction from then-Lieutenant Heller in speaking to the township manager and the township solicitor and Plaintiff Lindsay took direction from the township manager when he spoke to a representative of the MPOETC. In doing so, they were following the requirements set forth in section twenty-five of the police manual, and such actions furthered their duty to cooperate with a "state public agenc[y]", a task also required of them according to the manual. No other reasonable inference, including that Plaintiffs Barton and Lindsay acted in furtherance of their own rights, can be drawn in light of such clear requirements. Accordingly, the Court cannot find that the actions of Barton and Lindsay in reporting these matters to the township solicitor and township manager was an exercise of their freedom of speech under the First Amendment. Additionally, Plaintiff Lindsay's statement to the MPOETC was given at the direction of the township manager and was also not an exercise of free speech by Lindsay, but was an act taken in furtherance of his duties as set forth in the police manual.

The Second Amended Complaint sets forth allegations relating to Heller, Flinn, Lindsay and Barton's testimony before the MPOETC for the hearings related to Chief Valle's and Moss' actions. This further cooperation in being interviewed for their respective actions in the then-suspected wrongdoing of Moss and Chief Valle was an extension of the initial reporting of this matter to then-Lieutenant Heller and township officials. Although the record is unclear as to the exact sequence of of Lindsay and Barton's actions which resulted in the MPOETC interview of Plaintiffs Heller, Barton, Lindsay and Flinn, the facts of record support the conclusion that the Plaintiffs reported their concerns to the MPOETC in furtherance of their duties as Logan Township police officers, and do not suggest

---

*Hoenstine*, 411 F.2d 455, 458 (3d Cir. 1969).

they acted as private citizens seeking to expose wrongdoing of a superior. The facts of record support the conclusion that Plaintiff Lindsay spoke with the MPOETC at the direction of the township manager and that the Plaintiffs thereafter cooperated in the hearings regarding the adjudication of Chief Valle, a task that was clearly required of them in accordance with the police manual. While the Plaintiffs argue that their duties revolve around knowledge and enforcement of the Pennsylvania Crimes Code and Vehicle Code, these are not the exclusive duties set forth in the police manual. The Plaintiffs present no other *facts* of record to rebut the facts noted in the record by Fulare and the inference therefrom that their actions were in furtherance of their duty of cooperation as set forth in the police manual. Based upon these undisputed facts the Court must conclude that the Plaintiffs were serving as police officers of Logan Township in their acts of cooperating with the MPOETC proceedings. For these reasons, the Court will grant summary judgment to Fulare at Count I against all Plaintiffs, as the Plaintiffs' speech to MPOETC officials occurred at the direction of a superior and/or as a result of their duty to cooperate with state agencies in accordance with the Logan Township Police Manual.

Alternatively, the Court will review Fulare's arguments regarding qualified immunity.

### B. Qualified Immunity

The Supreme Court has found that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L. Ed. 2d 396, 410 (1982). The Supreme Court recognized the required nature of the unlawfulness of the alleged act in *Anderson v. Creighton*:

> It should not be surprising, therefore, that our cases establish that the right the official is

alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell, supra*, 472 U.S., at 535, n. 12, 105 S.Ct., at 2820, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L. Ed. 2d 523, 530-531 (1987).

A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.
If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272, 281 (2001).

The facts of record do not show that a constitutional right was violated, *i.e.* that the Plaintiffs' First Amendment right to free speech was violated. Assuming Fulare initiated the criminal investigation of the Plaintiffs in an attempt to retaliate against the Plaintiffs for their participation in the MPOETC proceedings, the facts of record only support the conclusion that the Plaintiffs

17

participated in the MPOETC proceedings in furtherance of their duties as police officers, not as private citizens exercising their rights to free speech. Fulare's position as township supervisor began in January 2004. The facts reveal that any direction to Lindsay or Barton came from Heller or the township manager, not one of the supervisors. Lindsay and Barton's actions in reporting the wrongdoings with respect to Moss' possession of MPOETC testing materials occurred in January 2003. The character of the Plaintiffs' speech controls this analysis and the facts, even when viewed in the light most favorable to the Plaintiffs, do not allow for the conclusion that they were exercising their free speech rights in cooperating with the MPOETC.

In light of the analysis of the "standing" and qualified immunity issues, the Court need not analyze the issues regarding whether Fulare's request for an investigation was a retaliatory action and whether the Plaintiffs' exercise of their freedom of speech rights under the First Amendment was in fact the basis of such retaliatory action.

**AND NOW**, this 14th day of June, 2007, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Plaintiffs' Counterstatement of Fact (filed as a part of Document No. 50) is STRICKEN FROM THE RECORD; IT IS FURTHER ORDERED THAT Defendant's Motion for Summary Judgment (Document No. 44) is GRANTED and the Clerk of Court shall mark this matter closed.

**BY THE COURT:**

*/s/ Kim R. Gibson*

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**